## THE CHARLES C. LISTER.

(Circuit Court of Appeals, Second Circuit.   November 14, 1910.)

Nos. 64, 65.

1. COLLISION (§ 95*)—SCHOONER CUTTING TOWLINE—FAULT—LIABILITY FOR
   SALVAGE.
   A schooner, which ran into the hawser of a tow in Chesapeake Bay at
   night and cut three barges adrift, *held* under the evidence an overtaking
   vessel, bound to keep out of the way and in fault, and liable for the sal-
   vage awards and costs paid by the owners of the barges to a rescuing tug.
   [Ed. Note.—For other cases, see Collision, Dec. Dig. § 95.*
   Overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

2. COLLISION (§ 123*)—SUIT FOR DAMAGES—SUFFICIENCY OF EVIDENCE—PROOF
   OF OWNERSHIP.
   While it is not usual, in suits for collision in which liability only is
   contested, for libelant to make direct proof of ownership, which is gen-
   erally admitted on the trial, still such ownership is an essential element of
   libelant's case, and, if denied by the pleadings, must in some way be
   proved to sustain a recovery.
   [Ed. Note.—For other cases, see Collision, Dec. Dig. § 123.*]

Appeals from the District Court of the United States for the South-
ern District of New York.

Proceedings in admiralty by the Southern Transportation Company
and by John C. Redman against the proceeds of the schooner Charles
C. Lister; Samuel W. Hall, claimant.   Decrees (174 Fed. 288) for
libelants, and claimant appeals.   Affirmed as to the Southern Trans-
portation Company, and reversed as to Redman.

See, also, 161 Fed. 585.

Hyland & Zabriskie, for appellant.

Horace L. Cheyney, for appellee Southern Transportation Co.

Carver, Wardner & Goodwin, for appellee Redman.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge.   In this action the owner of the coal-laden
barge Carroll and the owner of the coal-laden barges Nansemond and
Roanoke seek to recover out of the proceeds of the schooner Charles
C. Lister which was sold in proceedings to limit liability, salvage and
costs paid by them to the tug Dauntless.   The ground of liability as-
serted is that the peril from which the barges were rescued by the
tug was caused by the negligence of the schooner.

January 26, 1908, the tug Bohemia was bound from Baltimore down
Chesapeake Bay to Norfolk with five coal-laden barges in tow tan-
dem in the following order: Albemarle, Carroll, Nansemond, Roa-
noke, and Mascot.   The towing hawser was about 100 fathoms long,
and the hawsers between the barges about 75 fathoms each, the tug
being 95 feet and the barges all over 150 feet long, so that the tow
was at least half a mile in length.   At 6 p. m. the tow rounded Thimble
Light and then took the regular course W. by S. for Hampton Roads.
At about 8 o'clock, when near the entrance, she encountered the ebb

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tide, which runs E. by N. with a speed of five knots an hour at its strength. From that time down to the time of the collision, which is variously fixed as 10:30 or 11:30 p. m., the tow, notwithstanding the tug was working full speed ahead, drifted back, so that the tail of it was opposite Thimble Light.

During the whole of this time there was a strong wind from S. S. W. Shortly before the barges went adrift, the Mascot foundered near Thimble Light; the master and his wife going off in a small boat to the lighthouse. After this the tug just kept the tow stationary, without making headway over the ground. In this situation the tug and tow, although not moving, were under way (Inland Regulations, § 1), and obliged to carry the running lights, which they did, viz., the tug a white light at the stem, three white lights on the staff, two side lights, and the barges each two side lights. The tug and the barges also carried a white light hung aft behind the house, which, though used for a steering light, satisfied article 10 of the Inland Regulations as the light to be shown to an overtaking vessel.

Things being in this situation, the lumber-laden schooner Lister, bound from Moorehead City, N. C., to New York, with her regulation lights properly burning, turned in from sea for shelter in Hampton Roads on a steady N. N. W. course. The schooner ran into the hawser between the barges Albemarle and Carroll, slid up it slightly to port into the wind until it parted, then ported, continued on her way, and came to anchor at a point outside the Roads opposite Fortress Monroe.

No one on the tug nor on the barges discovered the schooner, and no one on the schooner discovered the tug or barges, until immediately before the collision. Some of the witnesses from the barges say they saw the schooner's green light, and some from the tug saw both side lights. Witnesses from the schooner say they saw two staff lights, and some that they saw one white light which crossed the schooner's bow, and they then saw the red, then the red and green, and then the red light of the tug. Such manœuvers, especially by a tug making no headway, were naturally found by the District Judge to be incredible. As a result of the collision the barges Carroll, Nansemond, and Roanoke drifted away on the ebb tide, came to anchor, and were subsequently towed into Norfolk by the tug Dauntless, which recovered salvage for her services.

It is of no consequence in this case whether the tug Bohemia was at fault, for the owners of the barges are éntitled to recover from the proceeds of the schooner if she was at fault. Those on the tug testify that the heading of the tow was constantly W. by S., directly to the tide. As the wind was strong from the S. S. W., it seems to us that the tow must have tailed somewhat north of this, so as to head perhaps W. S. W. Still the pleadings of both parties agree that the side lights of the tug were not visible to the schooner. If so, she was the overtaking vessel and bound to keep out of the way. Article 24, Inland Regulations. Though these side lights were not visible to the schooner, she ought to have seen for a considerable time as she approached the three staff lights on the tug, and the white lights aft on

the tug and on the barge Albemarle, and the red lights of the barges Carroll, Nansemond, and Roanoke.

On the other hand, if, as contended on the argument, the tug and tow were heading S. S. W. into the wind, the schooner ought to have seen the red lights of the tug and those of the barges, as well as the staff lights of the tug and stern lights of the tug and barge Albemarle. She would thus have been sufficiently apprised of the situation to enable her to avoid collision, as required by article 27 of the Inland Regulations, in cases where special circumstances render a departure from the rules necessary to avoid immediate danger.

We think the District Judge rightly held the schooner at fault and liable to the owners of the barges. But here another and very unusual circumstance arises. The original libel of the Southern Transportation Company alleged that it owned the Nansemond and Roanoke and the intervening petition of John C. Redman alleged that he owned the Carroll. These allegations were denied in the answers, and the libelants offered no evidence of ownership at the trial. One of the 31 assignments of error filed on behalf of the claimant of the proceeds of the schooner, viz., the twenty-seventh, was to the effect that the libel and intervening petition ought to have been dismissed, because no proof of ownership had been made. In this district positive proof of ownership, where liability only is contested, is rare; it being generally admitted on the trial. Still it is an essential element of the libelant's case, and must in some way be proved. February 25, 1910, the assignments of error were filed and served. June 2, 1910, the printed record on appeal was distributed by the clerk. October 10, 1910, the libelant, just before the appeal came on for hearing, moved for leave to take additional proofs on this point, which we denied, because rule 7 of this court in admiralty requires such application to be made within 15 days after the filing of the apostles, which period expired April 15, 1910.

We do not see how to piece over this failure of proof in Redman's Case. The record shows in the other case that Mr. Zabriskie, the proctor for the schooner, read at the trial from "the answer of the Southern Transportation Company, owner of the barges Roanoke and Nansemond," in the salvage suit, certain passages as admissions of the transportation company, as owner. He could not do this, and at the same time deny ownership.

Therefore the decree in favor of John C. Redman is reversed, without costs, and the decree in favor of the Southern Transportation Company is affirmed, with costs.